473 P.2d 398

Wayne E. CARROLL and Mary W. Carroll, husband and wife, Plaintiffs and Respondents,

v.

Phil M. BIRDSALL and M. LaVerne Birdsall, Defendants and Appellants.

No. 11854.

Supreme Court of Utah.

July 31, 1970.

**412**

Kenneth Rigtrup, Salt Lake City, for appellants.

Lionel M. Farr, Salt Lake City, for respondents.

HENRIOD, Justice.

Appeal from a judgment (or judgments) in an action to recover possession of property and damages, including attorney's fees, for unlawful detention thereof. Reversed and remanded, with instructions. No costs on appeal awarded.

This is an action involving a uniform real estate contract for the purchase and sale of a house and lot. The contract was dated July 1, 1954, calling for an $11,950 purchase price, a $200 down payment and $100 monthly payments at 6% interest. It had the usual provisions for 1) the sellers (the plaintiffs Carroll) to mortgage the property up to any balance due, requiring the sellers to convey the property when the mortgage equalled such balance due; 2) the buyers (defendants Birdsall) to pay the taxes; 3) forfeiture to sellers of payments made, upon default of the buyers, and allowing repossession because of such default; and 4) payment of reasonable attorney's fees by the defaulters if the contract required enforcement.

The defendants, though questioning it, appear to have been in default and behind in their payments, at least during most of over 13 years, when, on March 12, 1968, the sellers served a written notice on defendants to 1) pay up the delinquencies which the notice said amounted to $2,175.00 (which defendants emphatically denied to be the case), for $150 per month future monthly payments, for an unspecified sum for costs and expenses and $475.00 attorney's fees,—all "in accordance with the terms" of the contract,—else suit would follow to recover under the statutes. It is obvious that the notice given required the buyers to do something other than "in accordance with the terms" of the contract, namely, that as a condition of keeping possession, the buyers would have to pay

$150, instead of $100, per month in the future, would have to pay an unspecified amount of costs and expenses and $475 attorney's fees set by the sellers themselves. All this, even before any litigation was instituted. It is equally obvious that such a notice could not possibly convert buyers into tenants at will, since it required the buyers to do more than that for which the contract called, including unascertained costs and predetermined attorney's fees before suit. Besides the ailments of the notice, it had the infirmity of improper service upon one of the buyers, because of failure to mail copy to him.

This defective notice was followed by another notice on March 25, 1968, under the unlawful detainer act (Title 78–36–3, Utah Code Annotated 1953), based on the premise that the buyers were tenants at will, "pursuant to notice served on you upon the 12th day of March, 1968." This latter notice also was defective as being based on an obvious fallacy.

The above takes us back to the terms of the contract of July 1, 1954, and the rights of the parties thereunder, and to the complaint filed by the plaintiffs on April 15, 1968. The allegations of the complaint with respect to the two notices mentioned above, the reasonable rental value of the property and treble damages, prove to be surplusage and gratuities in light of what we have said above, and the relief prayed on account thereof consequently is without merit. What is left before us is a complaint for restitution of the premises for failure to make the payments as agreed; for forfeiture of payments made, as liquidated damages, plus costs and a reasonable attorney's fee, claimed to be $500 by the plaintiffs.

Although it be conceded that the defendants were constantly in arrears, several circumstances seem to be clear: 1) The record is unclear and almost immorally confusing; 2) the arrearages,—justifiably or no,—were allowed to persist, if they existed, for nearly 14 years; 3) the sellers had mortgaged the property; 4) this mortgage, if deducted from the balance due, would have left a relatively small balance due under the contract as compared to the purchase price; 5) the trial court entered a written memorandum decision on July 2, 1969, which was filed, stating the default was more or less the result of a mutual misunderstanding, that it would be unconscionable to declare a forfeiture, that the amount due on the contract was $4,133, but because of disputes, no interest was allowable, that plaintiffs were not entitled to treble damages, that $500 was a reasonable attorney's fee, that the plaintiffs owed $3,005 on the mortgage, and that defendants should pay the plaintiffs the difference between the $4,133 and $3,005;[1] 6) that

---

1. $1,128. Defendants deposited $1,500 in court to cover such contingencies.

without any reason shown in the record, the trial court entered another written decision a month later on August 2, 1969, which was filed, awarding plaintiffs immediate restitution of the property, quieting title in plaintiffs, and treble damages,—a complete reversal,—followed by a third judgment on September 25, 1969, of similar import, which also was duly filed,—all three judgments persisting on the record on an equal basis, except for the dates, without any showing of vacating or amending except by way of implication because of inconsistency.

This action was punctuated all the way through by inconsistent and largely self-serving accountings on both sides, by an almost complete and certainly abundant use of centipedal discovery procedures, a liberal use or abuse of unamorous niceties, and an ambivalent proclivity for judicial switch, such as to leave this court in a sobbing, equitable, soul-searching condition, —bereft of any solid basis for conclusion other than a secret one,—that the trial court must have muttered a vow to put those on the hill to the task of placating the unplacatable parties to this unfortunate litigation.

It would be impossible to reconcile the facts here or the unexplained multijudgment excursion into a realm of inconsistency,—even in this rapidly changing world, or even by way of the tempting free-wheeling and convenient vehicle of playing the sweet, protective refrain that the trial court will be sustained if there be any substantial evidence to support his conclusion, since he was in a better position, etc., etc., * * *. This is a case where some of the evidence supports the trial court some of the time, and some of it supports him all of the time, but all of it supports him none of the time.

Under the circumstances of this case, we believe the correct and equitable thing to do is to remand this case for the purpose of taking additional evidence, if required, as to the amounts called for under the terms of the contract, the amounts paid thereon, the delinquency, if any, any interest due under the contract, a reasonable attorney's fee for enforcing the contract against any one in default, with an accounting to be accomplished with an audit by appointment of an independent accountant or otherwise, as the trial court deems advisable, for entering findings and conclusions thereon, and to assess costs as the trial court deems equitable, applying any amount or amounts presently deposited with the court, in paying any balance due in favor of plaintiffs, after which defendants, if in default, shall have a reasonable time, designated by the court, to pay any balance due under the contract,—failing which the plaintiffs shall be decreed to have full restitution of the property, with all payments theretofore made by defendants assessed and kept by plaintiffs as

liquidated damages in accordance with the plain terms of the contract,—and it is so ordered.[2]

In concluding as we do, we might suggest that vitriol is expensive these days, and the application of a bit of friendly salve on the irritations of the parties might the more economically heal their ills, what with the spiraling cost of professional medication.

CROCKETT, C. J., and CALLISTER, TUCKETT, and ELLETT, JJ., concur.

2. See Dragos v. Russell, 1 Utah 2d 385, 267 P.2d 775 (1954).